IN THE SUPERIOR COURT OF BUTTS COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JIMMY FLETCHER MEDERS, | * | CIVIL ACTION NO. |
| | * | |
| | * | 93-V-188 |
| Petitioner, | * | |
| v. | * | |
| | * | CAPITAL HABEAS CORPUS |
| DERRICK SCHOFIELD, | * | |
| | * | |
| Respondent. | * | |
| | * | |

**FINAL ORDER**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**PURSUANT TO O.C.G.A. § 9-14-49**

COMES NOW before the court the Petitioner's Amended Petition for Writ of Habeas

Corpus as to his conviction and sentence in the Superior Court of Glynn County on criminal

action number 87-00763. Having considered the Petitioner's Amended Petition for Writ of

Habeas Corpus (the "Amended Petition"), the Respondent's Amended Answer, relevant portions

of the trial record, evidence admitted at the hearing on the merits, and the arguments of counsel,

the court makes the following findings of fact and conclusions of law as required by O.C.G.A. §

9-14-49 and grants the petition for writ of habeas corpus as to the convictions and thereby

vacates the sentence of death.

Filed 9/28/2005 at 12:00 ᵐ.

Ruth S. Smith

Chief Deputy Clerk of Superior Court

**TABLE OF CONTENTS**

I. Procedural History - - - - - - - 3

II. Summary of Petitioner Claims/Habeas Relief - - - 8

III. Findings of Fact/Conclusions of Law

    A. Claims That Are Moot - - - - - 8

    B. Claims That Are Barred - - - - - 9

       i. Summary of Findings – Barred Claims - - 12

    C. Claims That Are Procedurally Defaulted - - - 13

       i. Summary of Findings – Defaulted Claims - - 17

    D. Claims Proper For Habeas Review - - - 18

    E. Ineffective Assistance Of Counsel - - - - 23

       i. Summary of Petitioner's Claims - - - 23

       ii. Trial Counsel's Background & General Performance 23

       iii. Legal Standard - - - - - 26

       iv. Summary of Findings – Ineffective Counsel Claims 27

       v. Conclusion – Ineffective Counsel Claims - - 47

IV. Disposition - - - - - - - - 49

# I. PROCEDURAL HISTORY

A.  *Trial Proceedings in Glynn County Superior Court*

Petitioner, Jimmy Fletcher Meders, was indicted in the Superior Court of Glynn County on December 16, 1987 for the murder and armed robbery of convenience store clerk, Don Anderson. Petitioner was also indicted for the offenses of possession of a firearm during the commission of a felony, burglary and felony murder. Petitioner's trial began on April 3, 1989. Petitioner was convicted of the offenses of malice murder and armed robbery on April 7, 1989. During the sentencing phase of trial, the jury found the existence of two statutory aggravating circumstances: (1) that the offense of murder was committed while Petitioner was engaged in the commission of armed robbery and (2) that Petitioner committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value. Petitioner received the death sentence for the offense of murder and a consecutive life sentence for the offense of armed robbery.

The Georgia Supreme Court summarized the facts at trial as follows:

> The appellant, Jimmy Fletcher Meders, was convicted in Glynn County of malice murder and armed robbery. He was sentenced to death.
>
> Meders spent the afternoon and evening of October 13, 1987, in the company of three other men: his employer, Randy Harris; Harris' cousin Bill Arnold; and a friend of the latter, Greg Creel. The four began drinking that afternoon and continued drinking into the evening. Harris eventually parted company with the other three to entertain a teenage girl in a motel room. Meders and the other two borrowed Harris' car and spent a few hours bar-hopping. At 2:30 a.m., Creel stated he was hungry. They stopped at a convenience store. Arnold stayed in the car, while Creel and Meders entered the store. Creel went to the back of the store to warm a package of sausage-biscuits in the microwave oven. Meanwhile, Meders made a small purchase. When the cashier opened the register, Meders shot him in the chest with a .38 caliber revolver. The victim hit the wall and fell to the floor. Meders then shot him again, in the head.
>
> Creel ran out of the store to the car when the first shot was fired, leaving his food behind. After removing the money from the cash drawer (and triggering a silent

3

1       alarm in the process). Meders joined the other two before they could leave
2       without him.   They drove to a trailer park, where Arnold and Creel got out.
3       After offering the other two a share of the take--which they declined--Meders left
4       them and drove to Harris' motel room.  He woke Harris and told him he had "just
5       blowed a man's head off over thirty-eight dollars."
6
7       Meders was soon arrested.   Some of the "bait" money from the store, whose
8       serial numbers had been recorded, was found in Meders' wallet after he was
9       arrested.   Seventeen food stamps were found in the pocket of his coat.   The
10      murder weapon was found under the mattress of his waterbed.
11
12      The evidence, reviewed in the light most favorable to the verdict, supports the
13      conviction.
14

15      *Meders v. State*, 260 Ga. 49, 389 S.E.2d 320 (1990).

16

17   B.     *Motion for New Trial in Glynn County Superior Court*

18      Petitioner's motion for new trial was filed on April 24, 1989, heard on May 30, 1989 and

19 denied on June 8, 1989.  Petitioner was represented at the Motion for New Trial by his trial

20 counsel.

21

22   C.     *Appeal to the Georgia Supreme Court*

23      Petitioner filed a notice of appeal to the Supreme Court of Georgia on June 8, 1989. Trial

24 counsel originally filed the appellate brief for Petitioner on July 10, 1989. Subsequently, new

25 counsel was substituted for trial counsel and an additional brief was filed on behalf of Petitioner

26 on September 11, 1989. On February 28, 1990, the Supreme Court of Georgia rejected

27 Petitioner's claims raised on direct appeal, but remanded Petitioner's case to the trial court to

28 conduct a hearing on the issue of ineffective assistance of trial counsel. *Meders v. State*, 260 Ga.

29 49, 389 S.E.2d 320 (1990).

30      The Georgia Supreme Court ordered the following in remanding Petitioner's case, "The

4

1    question of effectiveness will likely have to be addressed at some point, and we see no reason not

2    to do it now. We therefore grant the state's request for a remand to give defendant an

3    opportunity to litigate this issue. If it is necessary to appoint counsel to represent the defendant

4    on remand, the court shall do so. After the conclusion of the proceedings on remand, the case

5    shall be returned to this court for review of the proceedings on remand and for the sentence

6    review, unless the result of such proceedings obviates the need for further appellate review."

7    *Meders*, 260 Ga. at 325.

8

9    D.     *Remand Proceedings in Glynn County Superior Court*

10          On March 26, 1991, the trial court conducted a hearing on the issue of whether trial

11   counsel rendered effective assistance of counsel. Petitioner was represented at this hearing by

12   new counsel, Andru H. Volinsky, James K. Jenkins, and Mary Erickson. Fifteen witnesses were

13   called on behalf of Petitioner during this remand hearing.

14          John W. Davis, Petitioner's Trial Counsel was hospitalized due to illness and did not

15   testify at the Remand Hearing. Petitioner's Motion to Continue the Remand Hearing so that Mr.

16   Davis could testify was denied via an Order dated March 22, 1991.

17          On July 10, 1991, the trial court entered an order finding that the Petitioner had failed to

18   establish ineffective assistance of counsel.   The trial court found that, "after carefully

19   considering the defendant's contentions and the record, the Court finds that the defendant has not

20   carried his burden of showing that there exists a reasonable probability that but for trial counsel's

21   alleged deficiencies the result of the trial would have been different." (Trial Court's Remand

22   Order, p. 9).

23

5

1   E.      *Appeal to Georgia Supreme Court from Remand Proceedings-Glynn Superior Court*

2           On appeal to the Georgia Supreme Court following the remand, the Court affirmed

3   Petitioner's convictions and sentence of death. *Meders v. State*, 261 Ga. 806, 411 S.E.2d. 491

4   (1992).

5

6   F.      *Petition for Writ of Certiorari – United States Supreme Court*

7           Petitioner then filed a petition for a writ of certiorari which was denied by the United

8   States Supreme Court on October 5, 1992. *Meders v. Georgia,* 506 U.S. 837, 113 S.Ct. 114

9   (1992).

10

11  G.      *The Instant Proceeding – State Habeas Corpus Petition*

12          Petitioner filed the instant petition for a writ of habeas corpus on April 2, 1993.

13  Respondent's return and answer was filed on April 22, 1993. On August 30, 1995, Petitioner

14  amended his Petition and Respondent filed a return and answer to the amended petition on

15  November 1, 1995. On June 2, 1993, this Court granted Petitioner's request for a psychiatric

16  examination. Pre-hearing briefs were also filed on behalf of Petitioner and Respondent. The

17  evidentiary hearing in this matter took place on November 28, 1995. ***John W. Davis,***

18  ***Petitioner's Trial Counsel, predeceased the evidentiary hearing.*** Counsel for Petitioner and

19  Respondent filed post-hearing briefs in this case and, at the request of this Court, both parties

20  filed proposed orders for this Court's consideration.

21

22                      ## II. SUMMARY OF PETITIONER CLAIMS
23                      ## FOR HABEAS RELIEF

24          This petition for a writ of habeas corpus, as amended, contains 35 claims for relief.

1    Among the claims asserted by Petitioner are the following general grounds for issuance of the

2    writ of habeas corpus: denial of his right to the effective assistance of counsel at the pretrial, jury

3    selection, guilt/innocence, and sentencing phases of the trial and also during the Motion for New

4    Trial; prosecutorial misconduct; trial court errors, including errors in jury instruction, errors in

5    evidentiary rulings, and failure to provide for expert assistance. Petitioner also asserts that the

6    imposition of the death penalty is disproportionate and unwarranted in this case and that the

7    Unified Appeal Procedure and the Georgia Capital Sentencing Statute are unconstitutional.

8            As set out herein, this Court finds: (1) some grounds originally asserted by Petitioner are

9    moot, and therefore not subject to habeas review; (2) some grounds are procedurally barred,

10   having been litigated on direct appeal; (3) some grounds are procedurally defaulted, the

11   Petitioner having failed to raise the errors timely and having further failed to satisfy the cause

12   and prejudice test or the miscarriage of justice exception; (4) some grounds are procedurally

13   defaulted but are nevertheless considered by this Court -- the Petitioner having shown sufficient

14   cause to excuse his procedural default; and, (5) some grounds are neither procedurally barred nor

15   procedurally defaulted and are therefore properly before this Court for habeas review. Each

16   specific ground asserted shall be set out separately, along with this Court's finding as to that

17   specific ground.

18

19                         III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

20   *A. Claims Originally Asserted That Are Moot*

21   1.       In Ground ¶ 1 "Denial of statutory notice in issuance of execution warrant", Petitioner

22   contends that his constitutional rights were violated due to the alleged denial of statutory notice

23   and issuance of the execution warrant.

7

1        In Ground ¶ 2 "Denial of notice in issuance of execution warrant by failure to comply

2    with terms of the court order", Petitioner contends that the denial of notice of issuance of

3    execution warrant, by the failure to comply with the terms of the court order, was also violative

4    of his constitutional rights and certain provisions of Georgia law.

5        *Finding As To Ground ¶ 1 and Ground ¶ 2:* In a letter to this Court dated August 18,

6    1994, counsel for Petitioner stated that "the first two issues (i.e. Ground ¶ 1 and Ground ¶ 2)

7    relate to procedural defects and the issuance of a prior execution warrant, and are now moot."

8    The Court notes that neither of the parties have briefed these claims. Further, because Petitioner

9    has informed this Court that he considers these contentions to be moot, this Court deems the

10    claims to be moot and no longer being asserted by Petitioner.

11

12    **B. Claims That Are Barred**

13        Georgia Law is well settled that, "[a]fter an appellate review the same issues will not be

14    reviewed on habeas corpus." *Elrod v. Ault*, 231 Ga. 750, 750 (1974) (Citations omitted). An

15    issue which has been "actually litigated, i.e. raised and decided, in the appellant's direct appeal"

16    cannot be reasserted in habeas corpus proceedings. *Gunter v. Hickman*, 256 Ga. 315, 316(1)

17    (1985) (citation omitted). Accordingly, on habeas corpus review, this Court may not revisit any

18    issue already addressed by the Georgia Supreme Court on Petitioner's direct appeal. Any claim

19    of error of violation of Petitioner's rights decided adversely to him on direct appeal is barred at

20    this stage, and habeas corpus relief is hereby denied as to each such claim of error or

21    constitutional violation. For each ground barred by having been previously litigated, this Court

22    will set out below the specific claim asserted by Petitioner and the corresponding portion of the

23    Georgia Supreme Court's decision on the direct appeal.

1    This Court finds that the following claims raised in the instant petition were litigated

2    adversely to Petitioner on direct appeal in either *Meders v. State*, 260 Ga. 49, 389 S.E.2d. 320

3    (1990), or following the remand in *Meders v. State*, 261 Ga. 806, 411 S.E.2d. 491 (1992) and

4    therefore, may not be relitigated in this habeas corpus proceeding:

5

6    2.    In Ground ¶ 8 "Refusal to appoint defense expert for trial and sentencing," Petitioner

7    challenges the issue of the trial court's refusal to appoint a mental health expert to assist the

8    defense at trial on issues of competence and sanity.

9    *Finding As To Ground ¶ 8:* This claim was raised and decided adversely to Petitioner on

10   direct appeal in *Meders v. State*, 260 Ga. at 51-52(b);

11

12   3.    In Ground ¶ 9 "Denial of jury challenge," Petitioner challenges the jury selection process

13   in Glynn County as being race-based and over representing the percentage of African-Americans

14   in the venire.

15   *Finding As To Ground ¶ 9:* This claim was raised and decided adversely to Petitioner on

16   direct appeal. *Meders v. State*, 260 Ga. 52-54(2).

17

18   4.    In Ground ¶ 10 "The cocaine charge summons," Petitioner asserts that the introduction of

19   a "cocaine charge summons," which was found in his wallet at the time of his arrest, violated his

20   constitutional rights.

21   *Finding As To Ground ¶ 10:* This claim – as to the admission into evidence of the

22   contents of Petitioner's wallet - was previously raised on direct appeal. *Meders v. State*, 260 Ga.

23   at 54(3). Therefore, this Court finds that Ground ¶ 10 was raised and decided adversely to

9

1    Petitioner on direct appeal.

2

3    5.    In Ground ¶ 12 "Prosecutorial misconduct in closing argument," Petitioner alleges

4    improper argument by the prosecutor at the guilt/innocence and sentencing phases.

5    *Finding As To Ground ¶ 12:* This claim was raised and decided adversely to Petitioner on

6    direct appeal in *Meders v. State*, 260 Ga. at 54(4).

7

8    6.    In Ground ¶ 13 "Insufficient Notice of the Trial Date," Petitioner alleges the failure to

9    provide Petitioner with sufficient notice of the particular trial dates scheduled by the trial court.

10    *Finding As To Ground ¶ 13:* This issue was raised and decided adversely to Petitioner on

11    direct appeal in *Meders v. State*, 260 Ga. at 54-55(5);

12

13    7.    In Ground ¶ 14 "Photographs," Petitioner alleges the introduction of "unnecessarily

14    gruesome" photographs into evidence.

15    *Finding As To Ground ¶ 14:* This issue was raised and rejected on direct appeal in

16    *Meders v. State*, 260 Ga. at 55(6);

17

18    8.    In Ground ¶ 15 "Involuntary Statements," Petitioner alleges that the admission of

19    allegedly involuntary statements by Petitioner violated various constitutional rights.

20    *Finding As To Ground ¶ 15:* This claim was raised and rejected on direct appeal in

21    *Meders v. State*, 260 Ga. at 55(7);

22

23    9.    In Ground ¶ 16 "Unified Appeal Procedure," Petitioner challenges the Unified Appeal

1    Procedure as unconstitutional on its face and as applied to Petitioner.

2         *Finding As To Ground ¶ 16*: This claim was raised and rejected on direct appeal in

3    *Meders v. State*, 260 Ga. at 55(9);

4

5    10.    In Ground ¶ 27 "Denial of Expert Assistance on Remand," Petitioner challenges the trial

6    court's denial of a mental health expert in proving his alleged claim of ineffective assistance of

7    counsel on remand.

8         *Finding As To Ground ¶ 27*: This claim was raised and rejected on appeal to the Supreme

9    Court of Georgia in *Meders v. State*, 261 Ga. at 806-807(1);

10

11   11.    In Ground ¶ 28 "Denial of jury selection expert on remand," Petitioner challenges the

12   trial court's denial of Petitioner's request for a jury selection expert for the remand proceedings.

13        *Finding As To Ground ¶ 28*:  This claim was raised and decided adversely to Petitioner

14   by the Supreme Court of Georgia in *Meders v. State*, 261 Ga. at 806-807(1);

15

16   12.    In Ground ¶ 29 "Denial of due process at remand hearing," Petitioner contends that the

17   trial court erred in denying his request for an expert in criminal law for purposes of the remand

18   hearing.

19        *Finding As To Ground ¶ 29*: This claim was raised and rejected by the Supreme Court of

20   Georgia in *Meders v. State*, 261 Ga. at 806-807(1);

21

22   13.    In Ground ¶ 30 "Failure to appoint mental health expert to support ineffectiveness claims

23   on remand with respect to involuntary statements," Petitioner challenges the trial court's refusal

11

1    to appoint a mental health expert for purposes of the remand.

2       *Finding As To Ground ¶ 30*: This claim was raised and decided adversely to Petitioner by

3    the Supreme Court of Georgia in *Meders v. State*, 261 Ga. at 806-807(1);

4

5    14.    In Ground ¶ 31 "Denial of expert assistance necessary to litigate ineffective assistance of

6    counsel ..." Petitioner alleges the trial court's denial of a request for a mental health expert at the

7    time of the remand hearing.

8       *Finding As to Ground ¶ 31*: This claim was raised and decided adversely to Petitioner by

9    the Supreme Court of Georgia in *Meders v. State*, 261 Ga. at 806-807(1).

10

11   15.    In Ground ¶ 33 "Denial of Full and Fair Hearing on Remand Because Funds for

12   Necessary Expert Assistance on Remand," Petitioner contends he was denied a full and fair

13   hearing during the remand hearing because he was denied funds for necessary expert assistance

14   including a psychologist.

15      *Finding As to Ground ¶ 33*: This claim was raised and decided adversely to Petitioner by

16   the Supreme Court of Georgia in *Meders v. State*, 261 Ga. at 806-807(1).

17

18

19   ***i. Summary of Findings - Claims That Are Barred***

20       This Court is bound by the decisions of the Georgia Supreme Court as to the claims

21   represented by Grounds ¶¶ 8, 9, 10, 12, 13, 14, 15, 16, 27, 28, 29, 30, 31 and  33, and therefore,

22   habeas corpus relief is denied as to each of these claims for relief.

23

1  *C. Claims That Are Procedurally Defaulted*

2      The claims discussed in the preceding section are procedurally barred because they were

3  actually litigated by the Petitioner in either his direct appeal from the trial court, or his direct

4  appeal from the remand for the hearing on the issue of ineffective assistance of counsel

5  (collectively, the "direct appeal"); he raised each alleged error or violation in a direct appeal, and

6  the Georgia Supreme Court decided the issue adversely to him. The claims discussed in this

7  section are also procedurally barred, not because they *were* litigated, but because they *could have*

8  *been* litigated at an earlier stage and were not. Georgia law clearly requires that errors or

9  deficiencies of the trial be objected to at trial and pursued on appeal if possible. The Georgia

10  Supreme Court stated the rule in the seminal case of *Black v. Hardin*, as follows:

11  a failure to make timely objection to any alleged error or deficiency or to pursue the same
12  on appeal ordinarily will preclude review by writ of habeas corpus. However, an
13  otherwise valid procedural bar will not preclude a habeas corpus court from considering
14  alleged constitutional errors or deficiencies if there shall be a showing of adequate cause
15  for failure to object or to pursue on appeal and a showing of actual prejudice to the
16  accused. Even absent such a showing of cause and prejudice, the relief of the writ will
17  remain available to avoid a miscarriage of justice where there has been a substantial
18  denial of constitutional rights.
19

20  *Black v. Hardin*, 255 Ga. 239, 240 (4) (1985). In *Valenzuela v. Newsome*, the Georgia Supreme

21  Court explained that a showing of "miscarriage of justice":

22  demands a much greater substance [than procedural irregularity or reversible error]
23  approaching perhaps the imprisonment of one who, not only is not guilty of the specific
24  offense for which he is convicted, but, further, is not even culpable in the circumstances
25  under inquiry. (A plain example is a case of mistaken identity.)
26

27  *Valenzuela v. Newsome*, 253 Ga. 793, 796 (4) (1985). The Court noted that the core purpose of

28  the writ of habeas corpus, "to free the innocent wrongfully deprived of their liberty," outweighs

29  technical procedural bars. Id.

1        Further, these principles of Georgia Law are codified in § 9-14-48(d).

2        This Court concludes that the following grounds for habeas relief which were not raised

3  by Petitioner at trial or on direct appeal have been procedurally defaulted and that this Court is

4  barred from consideration of any of these claims on their "merits," as Petitioner has failed to

5  demonstrate cause and prejudice sufficient to excuse his procedural default of these claims:

6

7  16.    In Ground ¶ 6 "Improper Instruction," Petitioner contends that there was an improper jury

8  charge on impeachment which allegedly tended to inflame the passions of the jury.

9       *Finding As To Ground ¶ 6* : This claim is procedurally defaulted, the Petitioner having

10  failed to raise the alleged errors timely and having further failed to satisfy the cause and

11  prejudice test or the miscarriage of justice exception;

12

13  17.    In Ground ¶ 17 "OCGA 17-10-30 is Unconstitutional," Petitioner asserts that the death

14  penalty violates the constitutional prohibition against cruel and unusual punishment.

15       *Finding As To Ground ¶ 17* : This claim is procedurally defaulted, the Petitioner having

16  failed to raise the alleged errors timely and having further failed to satisfy the cause and

17  prejudice test or the miscarriage of justice exception.

18        The Court notes that Petitioner's trial counsel filed a pre-trial "Motion to Strike and

19  Quash As Unconstitutional The Georgia Statute Providing For the Imposition Of the Death

20  Penalty," which the Trial Court denied on November 2, 1998. (Transcript of Proceedings,

21  November 22, 1998, Page 7).

22

23  18.    In Ground ¶ 18 "Application of Aggravating Circumstances is Unconstitutional,"

1    Petitioner alleges that the statutory aggravating circumstances contained in O.C.G.A. § 17-10-30

2    are applied in an unreasonable and arbitrary manner.

3           *Finding As To Ground ¶ 18* : This claim is procedurally defaulted, the Petitioner having

4    failed to raise the alleged errors timely and having further failed to satisfy the cause and

5    prejudice test or the miscarriage of justice exception;

6

7    19.     In Ground ¶ 19 "OCGA 17-9-3 is Unconstitutional," Petitioner alleges that O.C.G.A. §

8    17-9-3 allows subjective discretion in applying the death penalty.

9           *Finding As To Ground ¶ 19* : This claim is procedurally defaulted, the Petitioner having

10   failed to raise the alleged errors timely and having further failed to satisfy the cause and

11   prejudice test or the miscarriage of justice exception;

12

13   20.     In Ground ¶ 20 "OCGA 17-10-37 is not being complied with," Petitioner contends that

14   O.C.G.A. § 17-10-37 requiring the collection of data on sentences imposed in capital felony

15   cases denies impartial, individualized sentencing and guided discretion.

16          *Finding As To Ground ¶ 20* : This claim is procedurally defaulted, the Petitioner having

17   failed to raise the alleged errors timely and having further failed to satisfy the cause and

18   prejudice test or the miscarriage of justice exception;

19

20   21.     In Ground ¶ 21 "Violation of Greg (sic) v. Georgia," Petitioner challenges the sentence

21   review proceedings conducted by the Georgia Supreme Court.

22          *Finding As To Ground ¶ 21* : This claim is procedurally defaulted, the Petitioner having

23   failed to raise the alleged errors timely and having further failed to satisfy the cause and

1    prejudice test or the miscarriage of justice exception;

2

3    22.    In Ground ¶ 23 "Denial of motion for directed verdict," Petitioner contends that the

4    denial of his motion for directed verdict at the end of the state's case denied Petitioner's

5    constitutional rights.

6    *Finding As To Ground ¶ 23* : This claim is procedurally defaulted, the Petitioner having

7    failed to raise the alleged errors timely and having further failed to satisfy the cause and

8    prejudice test or the miscarriage of justice exception;

9

10   23.    In Ground ¶ 24 "Denial of motion for new trial," Petitioner contends that the denial of

11   Petitioner's motion for new trial violated his rights.

12   *Finding As To Ground ¶ 24* : This claim is procedurally defaulted, the Petitioner having

13   failed to raise the alleged errors timely and having further failed to satisfy the cause and

14   prejudice test or the miscarriage of justice exception;

15

16   24.    In Ground ¶ 25 "Vagueness in Statutory Aggravating Circumstances," Petitioner alleges

17   that the statutory aggravating circumstances are unconstitutionally vague and overbroad.

18   *Finding As To Ground ¶ 25* : This claim is procedurally defaulted, the Petitioner having

19   failed to raise the alleged errors timely and having further failed to satisfy the cause and

20   prejudice test or the miscarriage of justice exception;

21

22   25     In Ground ¶ 26 "Death Penalty Unconstitutional," Petitioner alleges that the death

23   penalty is unconstitutional.

16

1       *Finding As To Ground ¶ 26* : This claim is procedurally defaulted, the Petitioner having

2    failed to raise the alleged errors timely and having further failed to satisfy the cause and

3    prejudice test or the miscarriage of justice exception;

4

5    26.    In Ground ¶ 34 "Refusal to appoint defense expert for trail," Petitioner references the

6    substantive areas of testimony which would have been offered by a psychologist, had funds been

7    provided for expert assistance as contended in Ground ¶ 33 above.

8       *Finding As to Ground ¶ 34*: This claim (Ground ¶ 34) is procedurally defaulted, the

9    Petitioner having failed to raise the alleged errors timely and having further failed to satisfy the

10    cause and prejudice test or the miscarriage of justice exception. (Note: Ground 34 ¶ arises from

11    Ground ¶ 33 - Petitioner contended he was denied a full and fair hearing during the remand

12    hearing because he was denied funds for necessary expert assistance including a psychologist.

13    This Court has ruled that Ground ¶ 33 was procedurally barred).

14

15    ***ii. Summary of Findings - Claims That Are Procedurally Defaulted***

16       As to the claims represented by Grounds ¶¶ 6, 17, 18, 19, 20, 21, 23, 24, 25, 26 and 34,

17    this Court finds that Petitioner failed to raise these claims in a timely manner and therefore, that

18    they have been procedurally defaulted. Further, the Petitioner having failed to establish the

19    requisite cause and prejudice to excuse his procedural default of each of these claims, habeas

20    corpus relief is denied as to each of these claims.

21

22

23

*D. Claims Proper For Habeas Corpus Review*

The Court finds that the following Grounds are neither procedurally barred nor procedurally defaulted, and are therefore properly before the Court for habeas review:

*Failure to "reveal the deal"*

27.    In Ground ¶ 22 "Failure to 'reveal the deal,' " Petitioner alleges that the State "failed to reveal a deal" between the prosecution "key" state witnesses -- specifically, Greg Creel and William Arnold. (Both Creel and Arnold testified at Petitioner's trial. Both testified that they were present at the scene of the robbery and the killing and that Petitioner shot the victim.) Petitioner claims that in violation of *Giglio v. United States*, 405 U.S. 150, 153 (1972), the prosecution failed to disclose that it had an agreement with Creel and with Arnold for future prosecutorial leniency in exchange for testifying against Petitioner.

The Court notes Petitioner's assertion that neither Creel nor Arnold have been charged with any offense arising from the same transaction of events for which Petitioner has been charged, tried, convicted and sentenced to death.

Petitioner asserts that there were other unrelated charges pending against Creel and Arnold at the time they testified at Petitioner's trial, which charges were dismissed following Petitioner's trial. Further, Petitioner asserts that certain charges against Creel and Arnold were dismissed while the Petitioner's case was on appeal to the Supreme Court of Georgia. Petitioner claims that the timing of these dismissals supports the inference that the dismissals must have been pursuant to an agreement between the prosecution and Creel and Arnold -- an agreement for prosecutorial leniency including dismissal of criminal charges in exchange for their respective trial testimony against Petitioner.

1        *Finding As to Ground ¶ 22:* The Court finds that Petitioner has failed to prove the

2    assertions contained in Ground ¶ 22 "Failure to 'reveal the deal,' " and habeas corpus relief is

3    denied as to this claim.

4        This Court finds that Petitioner has failed to establish the existence of any such formal or

5    informal, explicit or implicit agreement.  Other than relying upon an implication based on the

6    dates of the charges lodged against Greg Creel and William Arnold and the dates that these

7    charges were disposed of, Petitioner has not offered any evidence to support his assertion that

8    these dismissals were pursuant to any agreement with the prosecution. The prosecutor in

9    Petitioner's case, John B. Johnson testified at the hearing before this Court that he was not aware

10    of any pending criminal charges against Creel or Arnold at the time of Petitioner's trial and he

11    testified that he did not make any deals with Creel or Arnold in return for their testimony. (H.T.

12    184).

13        This Court finds that the record shows that the only criminal charges against Creel and

14    Arnold at the time of Petitioner's trial, i.e., aggravated assault and criminal damage to property,

15    were not dismissed until over two years after Petitioner's trial was completed. (Petitioner's

16    Exhibit No. 34). Absent from the record before this Court is any confirmation by the prosecutor,

17    Creel or Arnold that the dismissal of any criminal charge pending against Creel and Arnold at the

18    time they testified was done pursuant to their participation as witnesses in Petitioner's trial. This

19    Court finds that that Petitioner has failed to establish a *Giglio* violation as a matter of fact or a

20    matter of law.

21

22        *Prosecutorial Failure To Reveal Exculpatory Evidence*

23    28.    In Ground ¶ 35 "Denial of Due Process in that the Prosecution Failed to reveal

1     Exculpatory Evidence", Petitioner alleges, in essence, a type of *Brady* violation. Petitioner

2     claims that the prosecution failed to disclose that its "key" trial witnesses (i.e. Creel and Arnold)

3     had pending criminal charges at the time they testified at Petitioner's trial.

4        *Finding As to Ground ¶ 35:* The Court finds that Petitioner has failed to prove the

5     assertions contained in Ground ¶ 35 and habeas corpus relief is denied as to this claim.

6        Petitioner asserts at the time of his trial, both Creel and Arnold were charged with

7     aggravated assault and criminal damage to property with the date of the offense being July 23,

8     1988. (Petitioner's trial ended on April 7, 1989). Therefore, the charges had been pending for

9     nine months before Petitioner's trial ended.

10       This Court finds that the charges were matters of public record in that Petitioner's counsel

11     could have discovered the pendency of these charges based on his own investigation, without the

12     necessity of the prosecution revealing the existence of these charges.  See *Baxter v. Thomas,* 45

13     F.3d 1501 (11th Cir. 1995)(finding that the allegedly suppressed evidence was evidence which

14     defense counsel could have obtained with "reasonable diligence.").  See also *United States v.*

15     *Davis,* 787 F.2d 1501, 1505 (11th Cir.) ("*Brady* rule does not apply if the evidence in question is

16     available to the defendant from other sources"), cert. denied, 479 U.S. 852, 107 S.Ct. 184, 93

17     L.Ed.2d 118 (1986). *Baxter* at 1507.

18       Thus, this Court concludes that the pendency of the criminal charges against Arnold and

19     Creel was available to Petitioner's counsel through other sources, including mere examination of

20     the record in the clerk's office with respect to whether there were any pending charges against

21     them prior to trial. Also, the charges had been pending for eight months prior to trial, making the

22     likelihood of their discovery by Petitioner's counsel even greater.  Since defense counsel could

23     have obtained this information by mere perusal of the public record, to which he had equal

1    access, disclosure of this information was not required.

2

3        *Prosecution Subornation of Perjury & Improper Closing Argument*

4        (NOTE: This section of the Court's Order shall address both Ground ¶ 4 and Ground ¶ 5).

5    29.    In Ground ¶ 4 "Prosecution subornation of perjury," Petitioner contends that the

6    prosecution knowingly elicited and argued false testimony during trial on issues that were

7    material to the consideration of Petitioner's guilt or innocence, thereby violating Petitioner's

8    rights to federal and state due process.  Specifically, Petitioner contends that Assistant District

9    Attorney John Johnson elicited material, false trial testimony from lead police investigator, Sgt.

10   Jack Boyett.

11        In Ground ¶ 5 "The prosecution impermissibly and inaccurately argued that the key

12   state's witnesses had told the same story from the time of the killing in this matter until trial,"

13   Petitioner further asserts that Assistant District Attorney Johnson argued the material, false trial

14   testimony (which Petitioner asserts that Johnson elicited in Ground¶ 4 above) during closing

15   argument.  Petitioner claims that the knowing use of the prosecutor of the uncorrected false

16   testimony constituted a violation of due process.

17        *Findings As to Ground ¶ 4 and Ground ¶ 5:*  The Court finds that Petitioner has failed to

18   prove the assertions contained in Ground ¶ 4 and that Petitioner has failed to prove the assertions

19   contained in Ground ¶ 5 - habeas corpus relief is denied as to these two Grounds.

20        In order to establish a due process violation, Petitioner must demonstrate that the

21   testimony was false, that the testimony was used by the State, that the State knew that the

22   testimony was false, and that the perjured testimony was material.  See *Williams v. Grizwald,*

23   743 F.2d 1533, 1542 (11th Cir. 1984).  (Petitioner's post-trial memorandum, p. 40).  This Court

1   concludes that Petitioner has not established as a predicate matter that the testimony of Sgt.

2   Boyett was false or, even assuming for the sake of argument that the testimony was "false," that

3   the State knew the testimony was false.

4        In *Jacobs v. Singletary*, 952 F.2d 1282, 1286-127 (11th Cir. 1992), cited by Petitioner,

5   the petitioner had already established that a witness's testimony was false and was used by the

6   State and the court then observed that only then was it required that the Petitioner "prove that the

7   prosecution knew or should have known that the testimony was false, and that the perjured

8   testimony was material. (Cites omitted)." This Court finds that Petitioner has failed to establish

9   that the testimony of Sgt. Boyett was false and as a result, this Court need not reach the questions

10  posed by Petitioner as to whether the prosecution knew or should have known that the testimony

11  was false, nor does this Court need to examine whether the allegedly perjured testimony was

12  material. As the Court stated in *Giglio*, a due process claim arises when the evidence indicates a

13  ***knowing*** use of perjured testimony by the prosecution. *Giglio v. United States*, 405 U.S. 150,

14  (1972) (Emphasis supplied). This Court finds that the testimony of Sgt. Boyett, considered in

15  context and in light of the entirety of his testimony, has not been established by Petitioner to

16  have constituted "false testimony."

17       Because this Court finds that the threshold showing of establishing the falsity of Lt.

18  Boyett's testimony has not been made by Petitioner, this Court need not reach the additional

19  assertions made by Petitioner that the prosecution knew or should have known that Sgt. Boyett's

20  testimony was false and should have corrected it, that the allegedly false testimony of Sgt. Boyett

21  was material, or that the allegedly false testimony was used to suborn perjury by Assistant

22  District Attorney Johnson twice during trial and later in closing argument.

23

22

1    *E. Ineffective Assistance of Counsel*

2

3    "...the ultimate focus of inquiry must be on the fundamental fairness of the
4    proceeding whose result is being challenged..."
5
6    - *excerpt from Strickland v. Washington*

7

8    *i. Summary Of Petitioner's Claims*

9    Petitioner's ineffectiveness of counsel claims are encompassed in: Ground ¶ 3 "Denial of

10   Effective Assistance of Counsel"; and, Ground ¶ 32 "Denial of Effective Assistance of Counsel."

11   Petitioner alleges 16 separate claims within Ground ¶ 3 "Denial of Effective Assistance

12   of Counsel" – claims (a) through (l) inclusive relate to the pre-trial investigation and the

13   guilt/innocence phase and claims (m) through (p) inclusive relate to the sentencing phase.

14   Petitioner alleges 3 additional claims within Ground ¶ 32 "Denial of Effective Assistance of

15   Counsel" – claim (a) relates to the hearing held in Glynn County Superior Court on ineffective

16   assistance on remand from the Georgia Supreme Court; claims (b) and (c) relate to pretrial

17   investigation.

18

19   *ii. Trial Counsel's Background & General Performance*

20   *Mr. Davis' Background.* Because John W. Davis, Petitioner's Trial Counsel, was not

21   present during the Remand Hearing, and predeceased the Habeas Hearing, this Court must take

22   judicial notice of Mr. Davis' background from a public record: *Biographical Directory of the*

23   *American Congress 1774-1996*; CQ Staff Directories, Inc.; Alexandria, Virginia:

24   John William Davis was born on September 12, 1916. He received a LL.B degree from

25   the University of Georgia Law School in 1937, was admitted to the Georgia Bar in 1939, and

1  entered law practice. He served in the War Department in various capacities during World War II

2  and resumed law practice after the war. Mr. Davis served as a Solicitor General (1950-1953); a

3  Superior Court Judge (1955-1960); and a United States Congressman (1961-1975).

4      Thus, at the time he accepted an appointment as the Public Defender for the Brunswick

5  Judicial Circuit, he had served as a private attorney, a prosecutor, a Superior Court Judge, and a

6  United States Congressman.

7

8      *Mr. Davis Had No "Second Chair" Attorney During Death Penalty Trial.* At the time of

9  trial, in October, 1987, Mr. Davis apparently served as the sole attorney for Petitioner. Having

10  just attained the age of 71 years, and in his 48th year of Georgia State Bar membership, the trial

11  transcript does not reflect that Mr. Davis was assisted by any other attorney during this death

12  penalty trial.

13

14      *Did Mr. Davis Review The Prosecutor's File?* At the instant habeas hearing, Prosecutor

15  Johnson testified that he met his responsibilities to produce exculpatory evidence consistent with

16  *Brady v. Maryland* by granting permission for trial counsel to review the prosecution's file.

17  Prosecutor Johnson, however, could not recall and had no documentation whatsoever as to when

18  the review occurred or how long trial counsel had spent with the file.  He could only say that the

19  review occurred some time between November 4, 1988 and April 5, 1989.  Habeas hearing

20  transcript (hereafter, "Habeas Tr") at 73.

21      Further, Trial counsel's file, Exhibits D-3, 3A, and 3B to the remand hearing does not

22  include a single note, photostatic copy of a single page or any indication whatsoever that counsel

23  for Mr. Meders at trial actually reviewed the prosecution's case file.

1    Given the lack of documentary evidence, the fact that Mr. Davis was unable to physically

2    testify at the Remand Hearing, the fact that the Remand Hearing proceeded without him and that

3    he predeceased the Habeas Hearing, *this Court is unable to conclusively determine if, or to*

4    *what extent, Mr. Davis may have reviewed the prosecutor's case file in his client's death*

5    *penalty case.*

6

7    *Mr. Davis Was Ignorant Of His Client's Mental Competency On The Eve Of The Death*

8    *Penalty Trial.* After the jury was chosen, placed under sequestration and transported to the hotel

9    prior to the beginning of the trial the next morning, Judge Tuten inquired as to whether there

10   were any additional pending motions to be heard. Trial Tr at 624. Mr. Davis responded: …

11   "there was a motion to have a psychiatrist appointed and….I haven't heard anything further from

12   it…" Trial Transcript at 625. Both Judge Tuten and Prosecutor John Johnson were aware that a

13   psychiatrist had been appointed, had rendered a report and John Johnson offered to "run off" a

14   copy of the report for Mr. Davis. Trial Transcript at 625.

15   Having been ignorant of the report's existence, *and on the eve of his client's death*

16   *penalty trial beginning at 9:30 the next morning*, Mr. Davis then stated:

17   Well, I would just like to ask Mr. Johnson, it would serve, serve my purpose to
18   just, if he would state in his place, does the copy state, or does the report, rather,
19   state that the defendant is compos mentis, that he is, that he is able to stand trial?
20

21   Trial Transcript at 626 (Lines 6 – 10).

22

23   Judge Tuten noted that his copy of the report indicated that the psychiatrist had sent Mr.

24   Davis a copy. Mr. Davis responded: "Well, it could have, it could be in my office now. I just

25   haven't seen it." Trial Transcript at 626-627.

1      Given the lack of documentary evidence, the fact that Mr. Davis was unable to physically

2    testify at the Remand Hearing, the fact that the Remand Hearing proceeded without him and that

3    he predeceased the Habeas Hearing, *this Court is unable to conclusively determine if, or to*

4    *what extent, Mr. Davis may have reviewed the prosecutor's case file in his client's death*

5    *penalty case.*

6

7      *Mr. Davis Was Ignorant Of His Client's Mental Competency On The Eve Of The Death*

8    *Penalty Trial.* After the jury was chosen, placed under sequestration and transported to the hotel

9    prior to the beginning of the trial the next morning, Judge Tuten inquired as to whether there

10    were any additional pending motions to be heard. Trial Tr at 624. Mr. Davis responded: …

11    "there was a motion to have a psychiatrist appointed and….I haven't heard anything further from

12    it…" Trial Transcript at 625. Both Judge Tuten and Prosecutor John Johnson were aware that a

13    psychiatrist had been appointed, had rendered a report and John Johnson offered to "run off" a

14    copy of the report for Mr. Davis. Trial Transcript at 625.

15      Having been ignorant of the report's existence, *and on the eve of his client's death*

16    *penalty trial beginning at 9:30 the next morning*, Mr. Davis then stated:

17            Well, I would just like to ask Mr. Johnson, it would serve, serve my purpose to
18            just, if he would state in his place, does the copy state, or does the report, rather,
19            state that the defendant is compos mentis, that he is, that he is able to stand trial?
20

21    Trial Transcript at 626 (Lines 6 – 10).

22

23      Judge Tuten noted that his copy of the report indicated that the psychiatrist had sent Mr.

24    Davis a copy. Mr. Davis responded: "Well, it could have, it could be in my office now. I just

25    haven't seen it." Trial Transcript at 626-627.

1

2          *Mr. Davis Failed To Make Any Opening Statement During The Guilt/Innocence Phase.*

3   After prosecutor John Johnson's opening statement, which laid out the state's theory of the case,

4   Mr. Davis stated: "Your Honor, we expect our defense to unfold as the evidence is brought in,

5   and at this time I wish to waive an opening statement..." Trial Transcript at 649. Thus, the jury

6   had no idea of the Defendant's theory of the case as the death penalty trial began.

7

8          *Mr. Davis Failed To Make An Opening Statement During The Sentencing Phase.*

9   Similarly, Mr. Davis declined to address the jury at the beginning of the sentencing phase of the

10  death penalty case. Trial Transcript at 1289.

11

12         *iii. Legal Standard For Ineffective Assistance of Counsel Claims*

13         In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set

14  out a two-part test for determining whether counsel's performance falls below constitutional

15  requirements:

16         First, the defendant must show that counsel's performance was deficient. This requires
17         showing that counsel made errors so serious that counsel was not functioning as the
18         "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant
19         must show that the deficient performance prejudiced the defense. This requires showing
20         that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
21         whose result is reliable. Unless a defendant makes both showings, it cannot be said that
22         the conviction or death sentence resulted from a breakdown in the adversary process that
23         renders the result unreliable.
24

25  *Strickland,* 466 U.S. at 687. The Court warned that "[j]udicial scrutiny of counsel's performance

26  must be highly deferential." *Id.* At 689.

27         The following year, the Supreme Court of Georgia adopted the *Strickland* standard for

28  judging claims of ineffective assistance of counsel in *Smith v. Francis,* 253 Ga. 782 (1985).

26

1    Regarding the first prong, the *Smith* court explained that the constitutional guarantee is for

2    "reasonably effective assistance" of counsel and that "the performance inquiry must be whether

3    counsel's assistance was reasonable considering all the circumstances...from counsel's

4    perspective at the time" and not with the benefit of hindsight. *Smith*, 253 Ga. At 783 (1). To

5    prevail, the defendant must overcome a strong presumption that "counsel's conduct falls within

6    the wide range of reasonable professional conduct and that all significant decisions were made in

7    the exercise of reasonable professional judgment." *Id.* To prevail on the second prong and show

8    prejudice, the defendant must prove that "but for counsel's unprofessional errors, the result of the

9    proceeding would have been different," i.e., the jury would not have convicted or recommended

10   death. *Id.* at 783-84. In *Smith,* the petitioner argued that his counsel was ineffective because he

11   asserted an unfounded insanity defense, but the habeas court found that the trial counsel's choice

12   of an insanity defense was reasonable under the circumstances and denied relief. In cases where

13   "inadequate representation" is alleged, the Georgia courts have focused the "critical factual

14   inquiry" on

15           whether the defendant had a defense which was not presented; whether trial counsel
16           consulted sufficiently with the accused, and adequately investigated the facts and the law;
17           [and] whether the omissions charged to trial counsel resulted form inadequate preparation
18           rather than from unwise choices of trial tactics and strategy.
19

20   *Hawes v. State*, 240 Ga. 327, 329 (1977). In evaluating a claim of ineffective assistance of

21   counsel,

22           Judicial scrutiny of counsel's performance must be highly deferential, indulging a strong
23           presumption that counsel's conduct falls within the wide range or reasonable professional
24           representation...Counsel is also presumed to have rendered adequate assistance and made
25           all significant decisions in the exercise of reasonable professional judgment.
26

27   *Zant v. Moon*, 264 Ga. 93, 97, U.S. Cert. Denied (1994) (citations omitted).

28

27

1   *iv. Summary Of Findings – Petitioner's Ineffective Assistance of Counsel Claims*

2   As set forth herein, this Court finds:

3   (a) some grounds are procedurally defaulted, the Petitioner having failed to raise the

4   errors timely and having further failed to satisfy the cause and prejudice test or the miscarriage of

5   justice exception (habeas corpus relief denied as to Ground ¶ 3 (d), (j), (l), (m), (n), (o) and (p);

6   and Ground ¶ 32 (a));

7   (b) some grounds, although normally procedurally defaulted, are nevertheless considered

8   by this Court – the Petitioner having shown sufficient cause to excuse his procedural default

9   (habeas corpus relief considered as to Ground ¶ 3 (a), (b), (c), (e), (f), (g) (h) and (i); and Ground

10   ¶ 32 (b) and (c); and,

11   (c) habeas corpus relief is granted to Petitioner upon consideration of claims asserted in

12   Ground ¶ 3 (a), (b), (c), (e), (f), (g) (h) and (i); and Ground ¶ 32 (b) and (c).

13   Based upon a careful review of the trial record, the evidence introduced during the trial of

14   the habeas petition, the arguments of counsel and the legal authorities cited here, the court finds

15   that trial counsel committed serious errors, which, when taken together, prejudiced the defense

16   and that the Petitioner was thereby denied a trial whose result is reliable as to the verdict and as

17   to the sentence. Accordingly, this court grants the petition for a writ of habeas corpus as to

18   conviction and thereby, also as to sentence. Trial counsel's performance was cumulatively

19   deficient in terms of investigation and preparation of the defense and in presentation of evidence.

20   This court finds that absent these errors it is likely that the result of the proceeding would have

21   been different and the jury would not have voted to convict, or in the alternative, voted to

22   recommend the death penalty. The court will discuss herein several of the most significant errors

23   of trial counsel which in the aggregate deprived Petitioner of his constitutionally protected right

28

1    to a fair trial.

2

3        *Ground 3(i) – Failure To Object To "Admission Of Several Items of Evidence Offered By*

4    *The State During The Guilt Phase Of The Trial"*

5        31. *Summary Of Claim:* In Ground ¶ 3(i), Petitioner asserts "Counsel failed to object to

6    the admission of several items of evidence offered by the State during the guilt phase of trial."

7    This Ground arises from the seizure of Petitioner's wallet at the time of his arrest. The wallet, its

8    contents and other items seized were reviewed and separated into evidence bags by investigators.

9    The evidence bags were proffered by the State *and were admitted into evidence without*

10   *objection by Petitioner's trial counsel.* Among the items thus admitted into evidence and

11   submitted to jurors were:

12        - a summons referencing a pending unrelated cocaine trafficking charge; and,

13        - food stamps

14

15        *Operation of Procedural Bar Can Produce Ineffective Assistance Claim*

16   32.    The Court notes that Ground 3 (i) arises from the same events discussed in Ground ¶ 10

17   ("Trial Judge Evidentiary Ruling Error – Introduction of Charge Ticket"). In finding that Ground

18   10 was procedurally barred, and in considering that the same underlying events also pertain to

19   Ground 3 (i), this Court notes the conclusion of the Georgia Supreme Court as to Ground 10:

20       *Absent any objection by the defendant* the court did not err by admitting the contents of
21       the defendant's wallet in evidence.
22

23   *Meders v. State*, 260 Ga. at 54(3) (Emphasis Supplied).

24        Thus, in this instance, this Court finds that the same underlying set of facts which

29

1    procedurally bars one of Petitioner's claims (Ground 10) simultaneously gives rise to an

2    ineffective assistance of counsel claim (Petitioner's Ground 3(i)).

3

4         *Ground 3(i) Is Not Procedurally Barred or Procedurally Defaulted*

5    33.    Respondent contends that the ineffective counsel claims alleged in Ground 3, in their

6    entirety, are procedurally barred. This Court finds that Petitioner has demonstrated the necessary

7    cause and prejudice to overcome the procedural bar.

8         In applying the "cause and prejudice" test, this Court follows the guidance of the

9    Georgia Supreme Court, which clarified the requirements for adequate cause and actual

10   prejudice in the landmark case of *Turpin v. Todd* in 1997, by holding that a procedural bar could

11   be overcome if the petitioner demonstrated, first, an adequate cause for failing to raise the issue

12   earlier and, second, actual prejudice resulting from the alleged error or errors.

13        In *Turpin v. Todd*, the Georgia Supreme Court defined the meaning of cause and

14   prejudice within the context of procedural default and O.C.G.A. § 9-14-48 (d) by noting that the

15   procedural default standards of § 9-14-48 (d) were modeled on the federal standards. The Court

16   further discussed that the pertinent federal standards included the grounds that a petitioner must

17   show that some objective factor external to the defense impeded counsel's efforts to raise the

18   claim that has been procedurally defaulted and a showing that the factual or legal basis for a

19   claim was not reasonably available to counsel.

20        In the present case, Petitioner has demonstrated adequate "cause" by demonstrating that

21   an objective factor external to the defense impeded counsel's efforts to raise these claims earlier

22   – namely, Petitioner was unable to cross examine his trial counsel, John W. Davis, at the

23   Remand Hearing held exclusively for the purpose of weighing the performance of his trial

30

1    counsel.

2         Further, Petitioner has demonstrated adequate "cause" by showing that the factual or

3    legal basis for the claim was not reasonably available to counsel – specifically, the following

4    testimony adduced during this habeas evidentiary hearing was unavailable to counsel during the

5    pendency of the direct appeal:

6         - Petitioner did not have access to testimony from the state's lead detective about the

7    other shootings that occurred shortly before the murder charged in this matter until the remand

8    hearing conducted in March, 1991.  The current record is thus more extensive than the record

9    that was compiled and provided to the Georgia Supreme Court.

10        - Petitioner did not have access to testimony from the state's lead detective about the feud

11   between the Creel family and the Brown family, admitting that the State was aware that Creel

12   knew the Brown family, or admitting that the State was aware that Creel and Arnold knew Keith

13   Bowen until the remand hearing conducted in March, 1991.  The current record is thus more

14   extensive than the record that was compiled and provided to the Georgia Supreme Court.

15        - Petitioner was not legally permitted to access the criminal records of Creel, Arnold and

16   Harris under the Georgia Open Records Act until after petitioner had completed his direct

17   appeal.  The current record is thus more extensive than the record that was compiled and

18   provided to the Georgia Supreme Court.

19        - Petitioner did not have access to the testimony of the trial prosecutor until this habeas

20   hearing.  The current record is thus more extensive than the record that was compiled and

21   provided to the Georgia Supreme Court on direct appeal.

22        - Testimony from prosecutor John Johnson at the habeas hearing established that he

23   failed to even consider the admissibility of evidence he proffered (e.g., the cocaine charge

31

1    summons) and that he knew the food stamps he introduced into evidence could not be linked to

2    the murder in this case.

3         This Court finds that the record compiled at the habeas stage of this litigation on the

4    following issues is materially different and more complete than the record that was previously

5    provided to the Georgia Supreme Court on appeal and that petitioner has shown good cause as to

6    why he was not able to previously compile so extensive a record.  Because the record related to

7    the following issues is different from that provided to the Georgia Supreme Court on direct

8    appeal, the petitioner is not simply re-litigating issues previously decided by the appellate court.

9    Having concluded that Petitioner has clearly demonstrated "cause", this Court also finds that

10   Petitioner sastifies the "prejudice" prong of the _Todd_ test. Specifically, Petitioner was clearly

11   prejudiced by his trial counsel's ineffectiveness in failing to object to the admission of an

12   unrelated charge, which allowed the prosecution to argue a motive for the murder, as well as

13   create a misrepresentation in the jurors' minds pertaining to other contents of his wallet which

14   could not be tied to the murder scene (i.e. food stamps).

15        Both the adequate cause and actual prejudice prongs of the _Todd_ test are satisfied, as a

16   result, Petitioner's claim _3 (i)_ has overcome the procedural bar in this habeas action, and is

17   properly before this Habeas Court for consideration.

18

19        _Failure to Object to Admission of Cocaine Charge Summons_

20   34.     The petitioner did not receive the effective assistance of counsel at trial as guaranteed by

21   the state and federal constitutions and was prejudiced thereby because trial counsel failed to

22   object to the admission into evidence, and the subsequent display to the jury, of the cocaine

23   trafficking charge ticket contained in Petitioner's wallet, when it was not the subject of a

1  conviction and would otherwise not have been admissible.  See *Sides v. State*, 213 Ga. 482, 99

2  S.E.2d 884 (1957) and *Anderson v. State*, 252 Ga. 103, 312 S.E.2d 113 (1984).

3

4  35.   The State introduced at trial a charging document in which Mr. Meders was charged with

5  the sale of cocaine.  See Trial Tr 1396-1402, Exhibits 37-42, see also Trial Tr 828-66.  The

6  cocaine charge was used by the State to support allegations by Harris that Meders needed money

7  to pay off a drug dealer and the need for money was the motive for the murder and robbery.

8  Trial Tr at 666.  Meders denied the allegation of being indebted to a drug dealer.  Trial Tr at

9  1101.

10

11  36.   Prosecutor Johnson, with petitioner's original defense counsel, reviewed all of the trial

12  exhibits before they were given to the jury before it began its deliberations.  Habeas Tr at 166-

13  67.

14

15  37.   Johnson testified at the Habeas Hearing that he did not consider the admissibility of the

16  cocaine sales charge contained in Meders' wallet before allowing it to be given to the jury.

17  Habeas Tr at 166-67.

18

19  38.   The defense did not object to the admission of a charge of cocaine trafficking that was

20  never prosecuted and never resulted in a conviction.

21

22  39.   Given the circumstances of a criminal case - especially a capital case - a reasonably

23  effective lawyer would have, at a minimum, *vigorously* objected to the admission into evidence

1   and submission to jurors of a criminal charge summons for an unrelated crime.

2       Indeed, the Court finds that a reasonably effective lawyer, operating under "open file"

3   discovery conditions, would have noted the summons during his pretrial investigation and would

4   have filed pertinent defense motions and evidentiary pleadings. Trial counsel's file, Exhibits D-

5   3, 3A, and 3B to the remand hearing does not include a single note, photostatic copy of a single

6   page or any indication whatsoever that counsel for Mr. Meders at trial actually reviewed the

7   prosecution's case file.

8       This Court finds that trial counsel's failure to object constituted grave error where, as

9   here, the unrelated charge summons was used to bolster testimony as to murder motive which

10   was adduced from an uncharged, unindicted party present at the scene of the crime who, in turn,

11   could have been impeached with prior inconsistent statements discovered during pretrial

12   investigation by a reasonably effective lawyer.

13       Accordingly, trial counsel's decision not to object, or failure to object, to the admission

14   of the cocaine charge summons into evidence cannot be defended as a reasoned strategic

15   decision. *Zant v. Hamilton*, 251 Ga. 553, 554-55 (3) (1983), U.S. cert. denied (1984). Habeas

16   corpus relief is granted to Petitioner upon consideration of claims asserted in Ground ¶ 3 (a)

17   failure to conduct an adequate pretrial investigation into the State's case; (b) failure to file

18   motions pretrial to protect Petitioner's right to a fair trial;  (c) failure to file motions to suppress

19   evidence; (e) failure to confront adequately the State's case during the guilt phase of trial; and (i)

20   failure to object to the admission of several items of evidence.

21

22       *Failure to Object to Admission of Food Stamps*

23   40.    The petitioner did not receive the effective assistance of counsel at trial as guaranteed by

1    the state and federal constitutions and was prejudiced thereby because trial counsel failed to

2    object to the admission into evidence, and the subsequent display to the jury, the food stamps

3    contained in Petitioner's wallet, when that Petitioner was in the food stamp program and that the

4    food stamps found on his person could not be tied to the convenience store.

5

6    41.    Food stamps were taken from the store that was robbed in this incident.  Habeas Tr at

7    164.

8

9    42.    Mr. Meders possessed food stamps when he was arrested and Mr. Johnson introduced the

10    food stamps found on Meders as evidence against him at trial.  Id. See also Trial Exhibits S-36,

11    40, 42, and 44.

12

13    43.    The lead detective in this matter, Det. Boyet researched the food stamps seized from

14    Meders and learned that the food stamps could not be tied to the convenience store and further

15    learned that Meders was a person who was receiving food stamps legally.  Habeas Tr 221.

16

17    44.    The prosecutor's file, compiled prior to trial, *contained a note from Boyet that "Unable*

18    *to trace any food coupons to store." Id.*

19

20    45.    The defense did not object to the admission of the food stamps even though they could

21    not be tied to the convenience store.

22

23    46.    The Court finds that a reasonably effective lawyer in a capital case would have, at a

1    minimum, *vigorously* objected to the admission into evidence and submission to jurors of the

2    food stamps found in Petitioner's wallet. Had Petitioner's trial counsel performed a rudimentary

3    investigation, he could have discovered that the Petitioner was a legal recipient of food stamps at

4    the time of the incident, and that the food stamps marked as exhibits could not be tied to the

5    convenience store.

6          Indeed, the Court finds that a reasonably effective lawyer, operating under "open file"

7    discovery conditions, would have noted the food stamps tagged as an exhibit during his pretrial

8    investigation and would have filed a Motion to Suppress and other pertinent evidentiary

9    pleadings. Trial counsel's file, Exhibits D-3, 3A, and 3B to the remand hearing does not include

10   a single note, photostatic copy of a single page or any indication whatsoever that counsel for Mr.

11   Meders at trial actually reviewed the prosecution's case file.

12         This Court finds that this failure to object to the food stamps – just as the failure to object

13   to the cocaine charge summons - also constituted grave error where, as here, the unrelated and

14   legally received food stamps contained in Petitioner's wallet were clearly intended by the

15   prosecution to cause jurors to connect the Petitioner with food stamps stolen during the scene of

16   the crime.

17         Accordingly, trial counsel's decision not to object, or failure to object, to the admission

18   of the food stamps into evidence cannot be defended as a reasoned strategic decision. *Zant v.*

19   *Hamilton*, 251 Ga. 553, 554-55 (3) (1983), U.S. cert. denied (1984). Habeas corpus relief is

20   granted to Petitioner upon consideration of claims asserted in Ground ¶ 3 (a) failure to conduct

21   an adequate pretrial investigation into the State's case; (b) failure to file motions pretrial to

22   protect Petitioner's right to a fair trial;  (c) failure to file motions to suppress evidence; (e) failure

23   to confront adequately the State's case during the guilt phase of trial; (h) failure to introduce

1    important, exculpatory evidence; and (i) failure to object to the admission of several items of

2    evidence.

3

4    *Failure To Introduce Police Incident Reports – Ga Hwy 303 Truck Incident*

5    47.    The petitioner did not receive the effective assistance of counsel at trial as guaranteed by

6    the state and federal constitutions and was prejudiced thereby because, if he had indeed reviewed

7    the State's file, the Petitioner's trial counsel failed to introduce corroborative evidence, and

8    failed to impeach Creel and Arnold with their prior statements. *Strickland v. Washington*, 466

9    U.S. 688 (1984).

10

11   48.    During its deliberations on Mr. Meders' guilt or innocence, the jury sent out a series of

12   questions to the trial court.  Question 5 read as follows:

13          1.  Was there any reports filed on the incident of the truck, on Ga Hwy 303,
14              reported between the day, after or between then and now, being shot at??[1]
15
16   Trial transcript (hereafter "Trial Tr") at 1061.

17

18   49.    The jury's Question 5 related to testimony offered by Mr. Meders and argued by trial

19   counsel to establish that Mr. Meders had not committed the murder.  Mr. Meders testified that he

20   was merely present at the convenience store at the time of the killing and had no foreknowledge

---

[1] The quoted question was one of six sent by the jury regarding factual issues.  The jury also asked if finger prints had been found or looked for at the site of the crime (questions 1 and 2), whether the police searched under a water bed on their first search of Mr. Meders' residence as the police found the murder weapon under the water bed at the residence during a second search after being tipped to look there (question 3), were there finger prints lifted from the water bed (question 4); and whether there was a purchase that could have explained the 49 cents change that showed on the convenience store cash register when the police arrived (question 6).  Trial Court Exh. 1, Trial Tr at 1061-62. The failure of defense counsel to address these issues was part of the ineffectiveness claim made at the Remand Hearing.  The trial court's response to these questions at trial simply required the jury to rely upon the evidence already introduced during the trial.  There was no evidence at trial introduced at trial about the police incident reports or the prior statements of Harris, Creel or Arnold.

1     of the robbery or killing. See Trial Tr. At 1092. The shooting, according to Meders' testimony,

2     was committed by one of his two companions on the night of the killing, Bill Arnold. Id.

3

4     50.     The State offered the testimony of Bill Arnold and the other companion, Gregory Creel at

5     trial. Creel and Arnold claimed that they were merely present when Meders shot the clerk and

6     that they had not known that Meders was armed or planned to shoot anyone. See Trial Tr at 708

7     and 741.

8

9     51.     Meders did not contest at trial that he owned the murder weapon. Trial Tr at 1082. He

10    contended, however, that Arnold had possession of the weapon and had used it to kill the clerk.

11    Trial Tr at 1092.

12        Thus, at trial, possession of the murder weapon prior to the killing was a critical issue in

13    contention.

14

15    52.     To support his assertion that Arnold committed the murder, Mr. Meders, in his trial

16    testimony, described how Arnold had used the murder weapon just prior to the killing to shoot at

17    pick-up trucks parked near certain locations. The trucks were owned by persons with whom

18    Arnold or Creel had been feuding. Trial Tr at 1085 and 1087.

19

20    53.     One of the trucks in question, according to Meders' direct testimony, was located at a

21    residence near Highway 303 and in the vicinity of a florist. Trial Tr 1086-87.

22

23    54.     Jury Question 5 established the importance of Mr. Meders' testimony about the shooting

1    at the pick-up truck near Highway 303.

2

3    55.    Trial counsel did not introduce any evidence to corroborate Meders' testimony about

4    Arnold and Creel shooting at the pick-up trucks. Meders' testimony was the only evidence

5    introduced at trial to show that Arnold and/or Creel had possession of the murder weapon on the

6    night of the killing.

7

8    56.    Mr. Meders established at the remand hearing that evidence had been available at the

9    time of trial to corroborate his descriptions of the pick-up truck shootings. Specifically, Exh. D-

10   2F from the Remand Hearing, is a police incident report of a complaint of the shooting of a pick-

11   up truck near Highway 303 that occurred about an hour before the murder. "[B]etween the

12   hours of 0100 and 0130 10-14-87 persons unknown fired a round, what appears to be a .38 cal.

13   projectile into the back of the cab of his 1977 Ford F100 custom pick up truck, black over

14   white...Complainant stated that he feels that the incident was caused by Larry Blockington and

15   **Greg Creel** due to some problems he has had with them in the past." Remand Hearing

16   Transcript (hereafter, "Remand Tr") at 294. Emphasis supplied.

17

18   57.    Indeed, the police officer who had taken the report from the pick-up truck owner

19   commented at the time he took the report that the slug found was similar to the one found at the

20   scene of the murder. Remand Tr at 96.

21

22   58.    Meders also testified at trial that Arnold wanted to shoot a man named Keith Bowen.

23   Trial Tr 1081-1084. Arnold and Creel had directed Meders to shoot Bowen and, when he

39

1    declined, Arnold shot at Bowen's truck, according to Meders' trial testimony.  Trial Tr at 1085.

2

3    59.    Exhibit D-2D is a police incident report of a complaint by Margaret Bowen, Keith's

4    mother, of a shooting of a pick-up truck at her home on October 14, 1987 approximately two

5    hours before the murder. "[A]t approx. 0030 hrs an older model vehicle...[squealed its tires and

6    passed through her yard and then]fired a shot possibly from a .22 cal weapon which struck the

7    wall near the front door.  Both complainant's son, **Billy Bowen**, and Steven Harris 18YOA who

8    also resides at the residence stated they have no idea who would have fired at the house...."

9    Remand Tr at 292.  Emphasis supplied.

10

11   60.    Billy Bowen testified at the remand hearing that he has a brother named Keith Bowen.

12   Remand Tr at 64-65.

13

14   61.  On direct examination at trial, the prosecutor in this matter, John Johnson, asked his lead

15   investigating detective, Jack Boyet:

16          Q.  At the time that you investigated this incident, at the time between that and
17          November of 1988, have you found any evidence whatsoever, any evidence to
18          indicate that Mr. Arnold and Mr. Creel and Mr. Harris ever possessed the gun that
19          killed Don Anderson?
20
21          A.  No, sir, I have not.
22
23          Q.  Have you found any evidence that would corroborate the statement made by
24          defendant, anything, that Bill Arnold went in that store, and Greg Creel went in
25          that store, and that Bill Arnold shot Don Anderson?
26
27          A.  No, sir, I have not.
28
29   Trial Tr at 900.
30
31

62.    Petitioner's trial counsel challenged Det. Boyet's testimony on cross-

examination and, in part, asked:

Q. And you stated that they [Arnold and Creel] denied shooting at a truck?

A. Yes, sir.

Q.  And did you have any reason to, to doubt that they were telling you the truth?

**A. The only thing I had to indicate that they did do it was, is Jimmy Meders
saying that they did.**

Q. So you have no other reason?

A. **There, there is no other evidence to indicate that they did.**  There, there are
no witnesses that saw it other than the, the three who were allegedly in the [car]
and I have no proof that they did do it.

Trial Tr at 908 (emphasis supplied).

63.    At the time of trial, the two above quoted police incident reports about the shooting of the

pick-up truck near Highway 303 and the shooting of the Bowen truck were in Prosecutor

Johnson's case file that he kept in this matter.

64.    Boyet also personally questioned Creel prior to trial and Creel admitted he knew Robert

Brown, the owner of the pick-up truck that was shot near Highway 303.  Remand Tr at 187.

65.    Boyet also testified at the remand hearing that the feud between Creel and Brown

mentioned by Meders was well known to his police department and that there were other

incident reports that documented the feud beyond the above quoted reports.  Remand Tr at 188.

66.    These additional reports that documented the feud between Brown and Creel were not

1    provided to defense counsel prior to trial. Remand Tr at 189-91.

2

3    67.    Indeed, approximately two months after the murder and 16 months before trial, Creel was

4    charged with trespass and throwing a railroad tie through the window of the Brown's vehicle and

5    a criminal arrest warrant was issued. Habeas Tr at 737, Exh. P-1. Det. Boyet was involved in

6    conducting photo line-up that resulted in Creel's identification by a third party witness. Habeas

7    Tr at 727, Exh. P-1.

8

9    68.    The petitioner and his trial lawyer were not advised of the charges or the altercation

10   between Brown and Creel investigated by Boyet.

11

12   69.    At the instant habeas hearing, Prosecutor Johnson testified that he met his responsibilities

13   to produce exculpatory evidence consistent with *Brady v. Maryland* by granting permission for

14   trial counsel to review the prosecution's file. Prosecutor Johnson, however, could not recall and

15   had no documentation whatsoever as to when the review occurred or how long trial counsel had

16   spent with the file. He could only say that the review occurred some time between November 4,

17   1988 and April 5, 1989. Habeas hearing transcript (hereafter, "Habeas Tr") at 73.

18

19   70.    There is no evidence that the police incident reports quoted above were in the

20   prosecution's file at the time when it was reviewed by defense counsel, if indeed a review took

21   place.

22

23   71.    There is no evidence that transcripts of the initial statements of Harris, Creel and Arnold

42

1   were in the prosecution's file when it was reviewed by defense counsel, if indeed a review took

2   place.

3

4   72.     There is no evidence that trial counsel ever asked Johnson for a copy of any document

5   from Johnson's file. Habeas Tr at 75.

6

7   73.     Johnson was asked at the habeas hearing about Boyet's testimony quoted in paragraph

8   34, *supra,* that "no evidence whatsoever" supported Meders' claim that Arnold and Creel had

9   possessed Meders' gun. He first claimed that he did not know Boyet's testimony was untrue.

10   Habeas Tr at 105-106. He later claimed it was accurate. Habeas Tr at 107.

11

12   74.     Johnson then gave another explanation for his conduct vis-à-vis the Boyet testimony that

13   no evidence or proof corroborated Meders' descriptions or refuted the denials of the shootings by

14   Creel and Arnold. After testifying that the testimony was accurate, Johnson next claimed that he

15   personally disbelieved Meders' testimony because Meders first mentioned the pick-up truck

16   shootings a year after he was arrested which would have been after trial counsel "had the

17   opportunity to have looked at our file...." Habeas Tr at 118.

18

19   75.     At the Habeas Hearing Johnson also conceded that the "incidents ... support [Meders']

20   statement looking at them today...." Habeas Tr at 119, and that the similarities between the

21   incidents documented in the police reports and Meders' descriptions were "obvious." Habeas Tr

22   at 120.

23

43

1    76.    When asked about his thoughts at the time of trial about Meders' descriptions and the

2  incident reports known to the prosecutor, Johnson testified, "I concluded in December or January

3  1988 and 1989 [four or five months before trial] that the statement that Meders made [about the

4  truck shootings] was the statement of what he wanted us to know."  Habeas Tr at 121.

5

6    77.    Johnson knew that Meders would "probably" testify about the truck shootings at trial.

7  Habeas Tr at 122.

8

9    78.    After repeated questions on the subject by Petitioner's counsel, Mr. Johnson was

10  questioned by this Court and stated that at the time of trial he had drawn no conclusion about the

11  truth or falsity of Meders' descriptions about the truck shootings.  Habeas Tr  121-24.

12

13    79.    Johnson testified at the Habeas Hearing that he did not consider the absence of the

14  corroborating evidence about the truck shootings to have been material to him at the time of trial.

15  Habeas Tr at 127.

16

17    80.    Johnson realized when the jury tendered Question 5 during their deliberations that the

18  jury was "concerned about a report of a truck shooting on 303."  Habeas Tr at 128.

19

20    81.    Johnson, nonetheless testified he did not believe he had any duty to advise the trial judge

21  of the existence of the police incident report, Exh. D-2F, that was in his file at the time.  Habeas

22  Tr at 129. Johnson never told Judge Tuten of the police incident reports until the time of the

23  Remand Hearing, after they had been obtained by substitute counsel purusant to a request under

1    the Georgia Open Records Act, O.C.G.A. Sections 50-18-70 *et seq.*.

2

3    82.    Detective, now Lieutenant, Boyet testified that the police incident reports of the pick-up

4    truck shootings were relevant to his investigation of the murder in this case and that is why he

5    placed copies of them in the case file.  Habeas Tr at 233-34.

6

7    83.    The police incident reports were relevant to Boyet's investigation of the murder because

8    the shootings occurred close in time to the murder, because one of the trucks shot was located at

9    the home of Keith Bowen's mother, and because Creel was specifically mentioned in the report

10   of the shooting of the truck near Highway 303 owned by Robert Brown.  Habeas Tr at 233-34.

11

12   84.    In preparation for trial, Boyet discussed directly with Johnson the feud between the

13   Browns, who owned the truck near Highway 303, and the Creels.  Habeas Tr at 236.

14

15   85.    Johnson was present shortly before trial when Boyet "probably" talked to Creel and

16   Arnold about the attempt to shoot Keith Bowen.  Habeas Tr at 237.

17   86.    Boyet and Johnson knew prior to trial that Creel and Arnold both knew Keith Bowen. See

18   Habeas Tr at 239.

19

20   87.    Boyet admitted at the Habeas Hearing that Creel and Arnold were "certainly suspects" in

21   the shooting of the truck near Highway 303.  Habeas Tr at 242.

22

23   88.    Trial counsel's file, Exhibits D-3, 3A, and 3B to the remand hearing does not include a

1   single note, photostatic copy of a single page or any indication whatsoever that counsel for Mr.

2   Meders at trial actually reviewed the prosecution's case file.

3

4   89.    Mr. Davis was ill and hospitalized and did not testify at the Remand Hearing. A motion

5   filed by the petitioner to continue the Remand Hearing so that Mr. Davis could testify was

6   denied. See Order of March 22, 1991. Mr. Davis died before the Habeas Hearing conducted by

7   this Court.

8          Also relevant to these proceedings, and to this specific issue, the remand court found:

9   "The most persuasive argument made by defendant relates to the failure of defense counsel to

10  produce independent evidence tending to corroborate testimony of the defendant which was

11  inconsistent with the testimony of the State's key witnesses and the failure to use prior

12  inconsistent statements of such key witnesses for impeachment purposes." Order at 7.

13

14  90.    The State has not introduced any evidence from Mr. Davis that establishes that he

15  reviewed the prosecution's case file as claimed by Prosecutor Johnson.

16

17  91.    The prejudice suffered by the petitioner as a result of the ineffective assistance of trial

18  counsel in: (a) failure to introduce corroborative evidence; (b) failure to impeach Creel and

19  Arnold with their prior statements; (c) failure to impeach Creel and Arnold with their prior

20  convictions; (d) failure to impeach their credibility by pointing out that they were facing

21  unrelated felony charges; and, (e) failure to object to irrelevant evidence - collectively served to

22  undermine the exercise of the jury's discretion in determining the proper sentence to be imposed

23  upon the petitioner and thereby violated the petitioner's right to the due process of law as

46

1    guaranteed by the state and federal constitutions.

2         Accordingly, habeas corpus relief is granted to Petitioner upon consideration of claims

3    asserted in Ground ¶ 3 (a) failure to conduct an adequate pretrial investigation into the State's

4    case; (b) failure to file motions pretrial to protect Petitioner's right to a fair trial;  (c) failure to

5    file motions to suppress evidence; (e) failure to confront adequately the State's case during the

6    guilt phase of trial; (f) failure to use prior inconsistent statements to impeach state's witnesses;

7    (g) failure to introduce police incident reports or evidence derived therefrom; (h) failure to

8    introduce important, exculpatory evidence; and (i) failure to object to the admission of several

9    items of evidence.

10

11        *v. Conclusion – Petitioner's Ineffective Assistance of Counsel Claims*

12        "The benchmark for judging any claim of ineffectiveness must be whether counsel's

13   conduct so undermined the proper functioning of the adversarial process that the trial cannot be

14   relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

15   The totality of representation must be examined in determining the effectiveness or

16   ineffectiveness of counsel. *Hicks v. State*, 169 Ga. App. 542, 542 (1984); *Dansby v. State*, 165

17   Ga. App. 41, 43 (1983). The seriousness of the charge is also a factor that must be considered

18   when looking at an ineffective assistance of counsel claim. *House v. Balkcom*, 725 F.2d 608, 615

19   (11th Cir. 1984). When the Petitioner's life hangs in the balance, the reviewing court must "pay

20   the utmost attention to rights guaranteed under the Constitutions of the United States and the

21   State of Georgia." *Ross v. Kemp*, 260 Ga. 312, 312 (1990) (citing *House v. Balkcom*, 725 F.2d

22   608, 615 (11th Cir. 1984)).

23

47

1    91.    Based upon these authorities and the facts cited above, the court finds that counsel's

2    performance was deficient and that counsel's errors, considered cumulatively, prejudiced the

3    defense.

4        Contained within the *Strickland v. Washington* opinion, one finds the following rarely

5    quoted - but very striking - conclusion:

6
7            Representation is an art, and an act or omission that is unprofessional in one case
              may be sound or even brilliant in another.
8

9    *Strickland v. Washington*, 466 U.S. 668 (1984).

10        The court has carefully reviewed the trial record, the evidence adduced at the evidentiary

11    hearing, the arguments of counsel, and the law applicable to Petitioner's claims. The Court finds

12    no circumstances in this death penalty case under which the following omissions by Petitioner's

13    trial counsel,  could viably be argued as sound, let alone brilliant:

14

15    -      the failure to discover (with open file discovery access), and/or to object to

16            admitting an unrelated criminal charge summons, intended to allow the jury to

17            mistakenly infer a motive for the crime;

18

19    -      the failure to discover (with open file discovery access), and/or to object to

20            admitting unrelated food stamps, intended to allow the jury to mistakenly infer

21            possession of the fruits of the crime;

22

23    -      the failure to discover (with open file discovery access), and to proffer, a police

24            incident report which clearly could have: (a) corroborated the Petitioner; (b)

1                    impeached the state's case detective; (c) impeached and implicated the state's

2                    key witnesses -- who were not charged with any offense arising from the events

3                    for which the death penalty was sought against Petitioner; and (d) been material

4                    to the jury during the guilt/innocence phase, given the direct question from the

5                    jury asking whether such an incident report existed.

6

7        The court finds that in the totality of this case the Petitioner has overcome the strong

8    presumption that his trail counsel rendered adequate assistance and has shown that his trial

9    counsel's performance was deficient and that the deficient performance prejudiced his defense.

10   The court finds that there is a reasonable probability that, but for the cumulative effect of

11   counsel's unprofessional errors, the result of the guilt-innocence phase would have been

12   different. Accordingly, the Petitioner has carried his burden of proof on both prongs of the

13   Strickland test as to whether his trial attorney provided ineffective assistance of counsel during

14   his trial.

15

16                              **IV.   DISPOSITION**

17        Based upon the above findings of fact and conclusions of law, this court hereby orders

18   that the write of habeas corpus is GRANTED as to convictions and, thereby also as to sentences.

19   Petitioner's convictions and sentences under the indictment in the Superior Court of Glynn

20   County, Georgia, criminal action number 87-00763, are hereby vacated. The Clerk for the

21   Superior Court of Butts County, Georgia, is directed to serve a copy of this Order on the

22   Petitioner, Counsel of Record for the parties, the Council of Superior Court Judges of Georgia,

23   and the District Attorney for the Brunswick Judicial Circuit.

1

2    IT IS SO ORDERED this _22nd_ day of _September_ 2005.

3

4                                          

5                        HONORABLE  JOE C. BISHOP

6                        JUDGE, SUPERIOR COURT

7                        Sitting by designation

8